# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **DIANE F. VANDERWELLE,**[1] | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | **No. 08 C 3002** |
| **v.** | **)** | |
| | **)** | **Magistrate Judge Maria** |
| **MICHAEL J. ASTRUE,** | **)** | **Valdez** |
| **Commissioner of Social Security,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |
| | **)** | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Diane Vanderwelle's claim for Supplemental Security Income Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Vanderwelle's motion for summary judgment [Doc. No. 29] is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 35] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings.

---

[1] Plaintiff's complaint lists her last name as "Vanderwelle," but in the motion papers and other documents in the record, her name is variously spelled as "Vanderwelle," "Vanderweele," and "Vander Weele." While the plurality of the documentation suggests that "Vanderweele" is the correct spelling, this opinion will use "Vanderwelle" to be consistent with the complaint.

## BACKGROUND

### I. PROCEDURAL HISTORY

This case's unusually lengthy procedural history began on January 25, 1994, when Vanderwelle applied for Supplemental Security Income and Disability Insurance Benefits, alleging disability since July 7, 1993. (R. 73-76.) Her application was denied on March 11, 1994, and upon reconsideration on August 5, 1994. (R. 79-86, 111-12.) She filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on July 18, 1995. (R. 32-52.) On the ALJ's own motion, a supplemental hearing took place on April 16, 1996. (R. 51, 53-72.) The ALJ's decision denying benefits was issued on September 20, 1996. (R. 11-19.) The Social Security Administration Appeals Council declined jurisdiction nearly a year later, and the decision was appealed to the United States District Court. (R. 3-4.)

Magistrate Judge Nolan then issued a memorandum opinion remanding the case to the Commissioner for further proceedings, finding that the ALJ failed to adequately articulate his grounds for rejecting the report of Vanderwelle's treating neurologist, and he did not properly evaluate her credibility. (R. 248, 250.) Magistrate Judge Nolan also noted potential bias on the ALJ's part and recommended the case be assigned to a different ALJ on remand. (R. 254.) The Appeals Council entered its remand order, assigning the case to a new ALJ per Magistrate Judge Nolan's recommendation. (R. 256-57.)

Claimant's second full hearing before an ALJ was held on April 18, 2001, (R. 422-81), and a negative decision was issued on May 11, 2001, (R. 281-89). Vanderwelle filed numerous exceptions with the Appeals Council, which remanded the case back to the same ALJ on May 31, 2003, noting a number of errors the ALJ made in applying the regulations and the District Court's remand order. (R. 302-06.) Vanderwelle's fourth hearing occurred on July 22, 2004, and the ALJ's decision denying benefits was issued on September 16, 2004. (R. 227-235, 482-546.) Vanderwelle again filed exceptions, and on November 28, 2007, the Appeals Council issued a notice that it was assuming jurisdiction. (R. 419-21.) On March 22, 2008, the Appeals Council issued the final decision of the Commissioner, which adopted the ALJ's findings entirely, but with clarifications. (R. 219-26.) The decision thus became reviewable by the District Court under 42 U.S.C. § 405(g), *see Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005), and Vanderwelle filed this timely complaint for judicial review.

## II.    FACTUAL BACKGROUND

### A.    <u>Background</u>

Vanderwelle was born on August 4, 1955 and was forty-three years old on December 31, 1998, her date last insured. (R. 73, 76, 223, 231.) She is five feet eight inches tall and weighed about 150 pounds. (R. 129.) Her educational background includes a college degree, some post-graduate courses, and certification as a financial planner. (R. 99, 539.) The alleged onset date of disability was July 7, 1993, following a motor vehicle accident. (R. 96). The specific impairments Claimant

3

alleges include: hyperextension injury; cervical neuropathy and compression; lumbar neuritis; cervical thoracic and lumbar subluxation; headaches; shoulder pain; cervical and lumbar myofascial pain syndrome; disc bulge at C4-5 and mild posterior protrusion at C6-7; and intractable fibromyalgia. Before the accident, Claimant had worked since 1975 as a vice president and product manager for a bank, where her duties included coordinating and supervising activities related to ATMs, computer systems, time deposit controls, checking account services, and other bank services. (R. 99, 440, 486-87, 539.)

### B. **Testimony and Medical Evidence**

#### 1. *Vanderwelle's Testimony*

Vanderwelle's main symptom is pain, which she has described as a seven or eight out of ten. (R. 497.) Her pain is in the neck and shoulders, as well as throughout her spine, and is exacerbated by any activity. (R. 494, 497.) She cannot bend or lift, nor can she sit at a desk and use a computer for more than fifteen minutes at a time. She cannot sit at a table and look down onto a pad of paper. (R. 499-500.) She sits in chairs that support her head and neck. (R. 490-91.) She had to have someone come in to help clean the house, as she cannot vacuum, stand and wash dishes, or carry a laundry basket. (R. 98, 435.) She engages in no physical activities other than walking and certain exercises ordered by her doctor. (R. 98.) She can drive only short distances, and her family has to carry the groceries into the home. (R. 492.) She gets easily fatigued, sits in a recliner four or five hours a day, and naps a couple of times a week. (R. 495-96.)

4

She has taken Ultram and Relafen for pain, as well as other medications for depression and insomnia, (R. 209-11), and also has utilized daily home traction, (R. 168). Prescription medications, however, sometimes did not work and/or gave Vanderwelle the side effects of headaches and nausea, so she eventually began taking only Aleve or aspirin. (R. 498-99.)

### 2. *Medical Evidence*

#### a. **Treating Physicians**

The morning after the July 7, 1993 accident, Claimant went to the emergency room, where an x-ray of her cervical spine was taken and found to be within normal limits. (R. 113-14.) Two weeks later, an orthopedic physician diagnosed Vanderwelle with cervical strain and mechanical low back pain and recommended exercises and anti-inflammatories. (R. 116-17.) Then on July 24, 1993, Dr. Robert DiMonda, a chiropractor, diagnosed cervical neuropathy-compression, lumbar radiculopathy, and traumatic arthropathy/inflammation. (R. 128-35, 165-73.)

Vanderwelle was treated by Dr. Henry Echiverri, a neurologist, between September 1993 and April 1996. He diagnosed cervical, dorsal, lumbar strain/sprain with myofascial pain syndrome, concluding that her symptoms were expected to be permanent. (R. 136, 138, 141.) Throughout October, Claimant attended eight physical therapy sessions and at the end of the month attempted to return to work. (R. 95, 119-26, 137.) However, she stopped working again after two days due to sever pain in the neck and shoulder region. (R. 95, 136.)

On December 3, 1993, an MRI showed a subtle posterior disc bulge at C4-5; a mild posterior disc protrusion at C6-7; and subtle neuroforaminal narrowing suspected with a possible subtle annulus fiber tear. (R. 127.) On December 16, 1993, Vanderwelle reported no new symptoms, and Dr. Echiverri recommended one more month of chiropractic therapy. (R. 138.) One month later, she reported that she was doing better, and Dr. Echiverri observed that her myofascial trigger points were not as bad. (*Id.*)

In February 1994, Vanderwelle reported pain flare-ups, and Dr. Echiverri prescribed medication and told her to continue with Dr. DiMonda, the chiropractor, and her physical therapy exercises. (R. 138-39.) Dr. DiMonda's April 21, 1994 progress report noted that Claimant's neck pain had improved, but she complained of mid-back pain; severe but intermittent thoracic pain; and occasional and less intense lower back pain. (R. 158.) His diagnosis remained unchanged, and he recommended Vanderwelle continue with a corrective program. (R. 158-59.) A December 16, 1994 progress report stated that she complained of lower back pain; severe pain between her shoulder blades; and spasms, tightness, and pain in her neck. (R. 155.)

On March 1, 1995, Vanderwelle reported that she no longer used pain medication because it gave her no relief, rating her neck pain as a four on a ten-point scale, her upper back pain as a seven, lower back pain as a four, middle back pain as a ten, and trapezius and shoulder pain as a three. (R. 186-87.) Dr. DiMonda noted that her response to her current treatment plan of two visits per week was

6

favorable, but her symptoms persisted, and he recommended continuing her current treatment plan, opining that she may need rehabilitative care on and off for the rest of her life. (R. 190.)

A September 1, 1995 MRI of Vanderwelle's cervical spine yielded essentially the same results as the one performed on December 3, 1993. (R. 200.) On January 16, 1996, based in part of the results of this MRI, Dr. Echiverri diagnosed chronic cervical strain/sprain and dorsal strain/sprain with severe myofascial pain syndrome resistant to treatment and a C6-7 herniated disc, noting that she had not improved despite ongoing treatment and prescribed pain medications including Ultram and Relafin. (R. 206-11.) He also reported that after a September 21, 1995 follow-up appointment, he had begun a series of trigger point injections in the neck and upper lumbar and mid-thoracic areas of the spine. (R. 206.) Dr. Echiverri further indicated that Claimant had reported continued problems with pain as of January 4, 1996, and he noted severe myofascial trigger points upon examination. (*Id.*) He recommended acupuncture and referred her to another doctor for cervical epidural steroid injections if she showed no improvement in a month. (R. 207.)

An image of Vanderwelle's cervical spine taken on April 23, 1996 showed a normal range of motion at C3/4, C4/5, and C5/6, but that the C2/3 level was hypermobile by approximately 44% and the C6/7 level was hypermobile by approximately 80%. (R. 218.) On April 30, 1996, Dr. Echiverri noted that Claimant's persistent pain would not allow her to maintain continuous postures such as sitting or standing for one hour at a time, she could not lift more than ten pounds, and

7

repetitive pushing or pulling was not possible. (R. 215.) He also maintained his conclusion that her condition was considered permanent. (R. 217.) He recommended that Vanderwelle continue acupuncture and various prescription pain medications and that she engage in physical exercise on an individual basis. (*Id.*) Claimant submitted no additional medical evidence documenting her condition or any treatment from April 30, 1996 to her date last insured, December 31, 1998.

### b. Agency Consultant Evaluations and Medical Expert

On July 25, 1994, Dr. Delano Zimmermann, a Disability Determination Service ("DDS") physician completed a Residual Functional Capacity ("RFC") evaluation. (R. 142-49.) Dr. Zimmermann concluded that Vanderwelle could perform medium work and was precluded from heavy work. (R. 143.)

On August 23, 1995, Claimant had a consultative examination performed by a state agency physician, Dr. James Ahlstrom. He noted recent paresthesias over the dorsal aspect of the distal left forearm but later noted that there was no bony or disc pathology or neurologic deficit. (R. 193, 196.) He concluded that her lifting and carrying abilities were limited by her lower back pain and reduced ability to bend. (R. 197-98.)

A medical expert testified at the hearing that Vanderwelle's impairments did not meet or equal the criteria for Listing 1.04 (disorders of the spine). (R. 515-24.) He also testified that the objective medical evidence did not show a basis for her alleged pain level. (R. 515-36.)

### 3. *Vocational Expert's Testimony*

A vocational expert testified at the hearing that Vanderwelle's most recent position as a product manager was skilled and done at the sedentary level of exertion. (R. 542.) The ALJ asked the VE whether the Claimant could perform this job if she were limited to lifting no more than ten pounds; standing, walking, or sitting for no more than one hour at a time; and no repetitive pushing and pulling. The VE responded that she could perform such a job. (R. 543.)

### C. **ALJ Decision**

In his findings, the ALJ stated that Vanderwelle met disability insured status requirements as of her alleged date of disability and continued to meet them through her date last insured and further found that she had not engaged in substantial gainful activity since her disability date. (R. 234.) The ALJ concluded that she suffered from the severe impairments of chronic cervical strain and sprain with myofascial pain, but that these conditions, alone or in combination, did not meet or medically equal any Listing. (*Id.*)

The ALJ found that Vanderwelle's testimony "was not fully credible as it was not supported by objective medical findings." (*Id.*) The ALJ determined that Vanderwelle retained the RFC "to perform work-related activities except for work involving lifting and carrying over ten pounds, prolonged walking and standing." (R. 235.) The ALJ next opined that Claimant's past relevant work did not require her to perform any activities precluded by the RFC's limitations, and thus she could

perform her past relevant work. (*Id.*) Accordingly, the ALJ ruled that Vanderwelle was not under a disability at any time through the date of the decision. (*Id.*)

### D. Decision of the Appeals Council

The Appeals Council issued a decision expressly adopting the ALJ's findings that Claimant's severe impairments do not equal a Listing, that she is limited to sedentary work, and that she is not disabled because she could perform her past relevant work as of her date last insured. (R. 223.) But while the Appeals Council expressly adopted all eight of the ALJ's specific findings, it felt the need to "clarif[y]" the decision, because the ALJ's decision did not fully comport with Magistrate Judge Nolan's order. The Appeals Council noted:

> [T]he Administrative Law Judge did not sufficiently articulate his reasons for rejecting the medical opinion of treating source Henry Echiverri, M.D.; he did not conform his credibility evaluation to 20 CFR 404.1529 and Social Security Ruling 96-7p; he failed to include a complete function by function assessment in the residual functional capacity finding and the decision erroneously names the claimant's past work as a "production [sic] manager."

(*Id.*)

The Appeals Council then evaluated each area insufficiently articulated in the ALJ's decision, ultimately reaching the same conclusion that Vanderwelle was not disabled at any relevant time. (R. 222-25.)

10

## DISCUSSION

## I.   ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42. U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed?  (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work?  20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.    JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are support by substantial evidence or based upon legal error. *Clifford v. Apfel,* 227 F.3d. 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any

12

conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

In her motion to reverse the Commissioner's final decision, Vanderwelle alleges a number of errors related to every step determination, including: (1) the ALJ improperly found that Vanderwelle's complaints of pain were not credible; (2) the ALJ did not adequately consider medical evidence supporting a finding of disability; and (3) the ALJ made an erroneous RFC determination.

### A. <u>Credibility</u>

An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *See Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *see also Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.'"). However, an ALJ

13

must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Lopez* ex rel. *Lopez v. Barnhart*, 336 F.3d 535, 539-40 (7th Cir. 2003) (quoting *Zurawski*, 245 F.3d at 887-88).

When assessing the credibility of an individual's statements about pain or other symptoms and their functional effects, an ALJ must consider all of the evidence in the case record. *See* SSR 96-7p.[2] In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own observations of the individual as part of the overall evaluation of the credibility of the individual's statements. *Id*.

In this case, the ALJ did not find Vanderwelle's testimony "to be fully credible or indicative of a disabling impairment . . ." (R. 233.) As the Appeals Council's decision recognized, the ALJ's credibility determination was flawed because his conclusions were based almost exclusively on his finding that Claimant's complaints were not consistent with the objective medical evidence in the record. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("[A]n ALJ may not discredit testimony of pain solely because there is no objective medical evidence

---

[2] Interpretive rules, such as Social Security Regulations ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

14

to support it."); *see also Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (holding that the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions").

In its "clarification" of the ALJ's credibility analysis, the Appeals Council specifically noted that the decision improperly failed to address Vanderwelle's daily activities; the use of medications or reasons for their lack of use; pain relief treatment other than medication; and any other measures used to relieve pain, such as lying down, alternating sitting/standing, etc. (R. 224.) The Appeals Council then discussed Vanderwelle's activities as well as her use of medications and other treatments, concluding that her "symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence of record but not to the extent alleged or to preclude all work activity. Therefore, the claimant's statements of disabling pain are not credible." (R. 224-25.)

The Court finds that the Appeals Council's efforts to repair the ALJ's improper credibility finding are unpersuasive. The Court has been given no basis upon which to evaluate the Appeals Court's reasons for concluding that Vanderwelle's complaints are consistent with the objective medical and other evidence but yet not entirely credible.[3] The decision recites a litany of Vanderwelle's

---

[3] Notably, in its May 31, 2003 order remanding the second ALJ decision, the Appeals Council criticized an almost identical conclusion. The ALJ found that Vanderwelle's

activities and treatments, but it is wholly unclear which one(s) undermined her

credibility in relation to her complaints of pain. Indeed, the recitation of

Vanderwelle's daily activities and treatment regimen could well be consistent with

that of someone with disabling pain, including her inability to bend her head and

neck to write or use a computer, or to work at a desk for more than a half hour at a

time before lying down or sitting and resting her neck; her reliance on others to

perform nearly all household tasks; and her decision to stop prescribed medications

at various times due to their ineffectiveness or side effects. (R. 224.) The importance

of the credibility determination is manifest, because if her complaints of pain are

credited, she will be found disabled, pursuant to the VE's testimony. (*See* R. 544

(noting that there are no jobs for a person who is unable to look down at a desk or

needs to sit in a recliner to reduce pressure on her neck)). The Court therefore finds

that this case must be remanded back to the Commissioner for a full and fair

analysis of Vanderwelle's credibility, consistent with relevant statutes, regulations,

and case law.

### B.     Medical Evidence/RFC Determination

Vanderwelle next argues that the ALJ did not place appropriate weight on

the medical evidence supporting a finding of disability. The ALJ took great pains to

---

testimony was "generally credible," but he "did not find the claimant's testimony as credible to warrant any additional narrowing of her residual functional capacity." (R. 304.) In response, the Appeals Council stated: "It is unclear how the [ALJ] considered the claimant's testimony credible to any degree despite his finding that her testimony was generally credible." (*Id.*)

suggest that he did not entirely discount the opinion of Dr. Echiverri, the treating neurologist, stating that his opinion was "entitled to some weight" and was given "special consideration." (R. 232-33.) However, the ALJ expressly gave less weight to Dr. Echiverri's opinion than to that of the non-examining state agency physician, who concluded that Vanderwelle could perform medium work. (R. 232.) His reasons for doing so are inscrutable. The ALJ began by reciting a general principle that the opinions of state agency consultants "must be treated as expert opinion evidence of non-examining sources at the [ALJ] level. These opinions may not be ignored and [ALJs] must explain the weight given to these opinions in their decisions." (*Id.*) But the ALJ went on to state that "[p]ursuant to the above, the [ALJ] places more weight on the opinion of the state agency physician. There is nothing to contradict it and in fact it is consistent with the objective medical evidence." (*Id.*) The ALJ thus appeared to conclude that the opinion of a non-examining agency physician is entitled to greater weight than that of a treater unless it is contradicted by or inconsistent with the record. This conclusion turns well-settled law on its head: "A treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record. . . . An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (citations omitted). Furthermore, even if the decision included "sound reasons for refusing to give [Dr. Echiverri's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Id.* (explaining that if a treating physician's

17

opinion is not given controlling weight, the regulations require consideration of "the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion").[4]

The ALJ does attempt to discount Dr. Echiverri's opinions based on their alleged inconsistency with the medical and testimonial evidence, but he does not adequately articulate the basis for his conclusion. Although the ALJ alleges there are no objective medical findings supporting Dr. Echiverri's limitations on Claimant's sitting, standing, or walking, he fails to show how these limitations are inconsistent with other evidence in the record. The ALJ gave no consideration at all to the medical opinions of Dr. DiMonda (which were generally consistent with Dr. Echiverri's opinions), but he gave no reasons for disregarding them. Similarly, the ALJ discounted and failed to meaningfully discuss Vanderwelle's diagnosis of myofascial pain syndrome,[5] and focused instead on evidence related to her orthopedic impairments. Because the ALJ failed to even discuss evidence that may have been consistent with and/or supported Dr. Echiverri's opinions, the Court cannot credit his reasons for discounting those opinions.

---

[4] The ALJ also did not explain why, if he gave greater weight to Dr. Zimmerman's opinions, he ultimately concluded that Vanderwelle had a sedentary RFC rather than one for medium work, as urged by Dr. Zimmerman.

[5] "Myofascial pain syndrome is a chronic form of muscle pain that centers around sensitive (trigger) points in a person's muscles." *Milliken v. Astrue*, 397 Fed. Appx. 218, 220 (7th Cir. 2010) (citing MayoClinic.com, Myofascial pain syndrome, http:// www. mayoclinic. com/ health/ myofascial- pain- syndrome/ DS 01042 (last visited Oct. 8, 2010)).

18

Furthermore, the ALJ's conclusions relating to Vanderwelle's RFC limitations are internally inconsistent. At one point in his decision, the ALJ "concludes that the claimant is capable of performing sedentary work with some limitations from repetitive continuous sitting, standing, and walking and lifting and carrying." (R. 233.) But in the following paragraph, he opines that a limitation on walking, standing, or sitting for extended periods of time "is not supported in the overall record, with the treatment records or in fact the claimant's testimony." (*Id.*) Then two paragraphs later, returns to the notion that Claimant "could not do a significant amount of prolonged standing, sitting or walking," adding that nothing precluded her "from performing this throughout a normal 8-hour workday." (*Id.*) The ALJ ultimately found that Vanderwelle's RFC was limited only by "prolonged walking and standing," as well as other limitations not relevant here. (R. 235.)

The Court therefore concludes that the matter must be remanded to the Commissioner for a thorough consideration of all of the medical evidence in the record and a detailed explanation of why certain evidence was given greater or lesser weight. As part of this analysis, the Commissioner should pay particular attention to the medical evidence as it relates to Vanderwelle's RFC determination. The Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and his ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On

remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *see Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000)*; Luna v. Shalala,* 22 F.3d 687, 693 (7th Cir. 1994). The Court further emphasizes that this opinion is limited to two major errors justifying remand. The Commissioner should not assume that any other claimed errors not discussed in this order have been adjudicated in his favor. On remand, the Commissioner therefore must carefully articulate his findings as to every step.

## <u>CONCLUSION</u>

For the foregoing reasons, Vanderwelle's motion for summary judgment [Doc. No. 29] is granted in part and denied in part, and the Commissioner's motion for summary judgment [Doc. No. 35] is denied.   The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this opinion. Based on the long delay at each stage of these proceedings, the Court strongly encourages the Commissioner to move forward with the remand order as soon as is practical.

SO ORDERED.                              ENTERED:


DATE:    September 30, 2011      _____
                                         HON. MARIA VALDEZ
                                         United States Magistrate Judge